**Ellen K. MONK, Appellant,**

v.

**DOCTORS HOSPITAL and Henry L. Darner, Appellees.**

No. 20945.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 6, 1967.

Decided Oct. 10, 1968.

Mr. Carl L. Taylor, Washington, D. C., with whom Mr. Frank F. Roberson, Washington, D. C., was on the brief, for appellant.

Mr. Thomas Penfield Jackson, Washington, D. C., with whom Mr. John L. Laskey, Washington, D. C., was on the brief, for appellee, Doctors Hospital.

Mr. James A. Welch, Washington, D. C., with whom Mr. John L. Ridge, Jr., Washington, D. C., was on the brief, for appellee, Darner.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and BURGER, Circuit Judge.

PER CURIAM:

This is an appeal from directed verdicts for Appellees in actions against Doctors Hospital, Washington, D. C. and Appellee Darner for damages for burns sustained by Appellant. In her complaint Appellant alleged that the burns resulted from the negligent operation of a "Bovie" electrosurgical machine used to remove moles. At the conclusion of the Appellant's case, the trial judge directed verdicts for both defendants. We reverse as to both.

Appellant was in the hospital for abdominal surgery and before the surgery she asked Dr. Darner if he would also remove three moles from her right arm and one from her right leg. He instructed a hospital nurse to prepare a Bovie machine, but he was not present while she set up the machine. The nurse testified that the patient had already lost consciousness, and was strapped to the table, when she placed the contact plate of the Bovie machine under the patient's right calf. Appellant claimed burns resulted from contact with the plate and that the procedure was negligently performed.

In support of her claim as to improper placement of the plate, Appellant introduced instruction manuals issued by the manufacturer of the machine and available to the hospital stating that when the patient was on his or her back the plate should be placed under the buttocks or under the shoulder blades. Appellees argue that the admission of these manuals was error.[1] They contend that the manuals cannot assist in establishing negligence because they do not establish the relevant standard of care under established local standards. The manuals described the reason for applying the contact plate to large areas of flesh as being the prevention of skin burns from the electricity passing between the patient's body and the plate. Although it is correct that the manuals do not purport to articulate the standards prevailing in this area, they are plainly directed at correct use of the machine and practitioners using such a machine cannot ignore instructions of the maker without some reason. Hence the manuals had probative value and were properly admitted. Moreover, since both Dr. Darner and the nurse testified that they were familiar with these manuals, the manuals would demonstrate that the doctor and the nurse were on notice as to the risks of improper operation of the Bovie machine. Appellees argue that, even if admissible, the manuals were not evidence of negligence because the manuals themselves may be read to permit the placement elsewhere than the shoulders and buttocks.[2] Of course, the manuals are not conclusive as to the proper standard of care, but the question is whether they were relevant and admissible for guiding the jury. The inferences to be drawn from conflicting language in the manual is a question for the jury. We hold only that the manuals could be considered by the jury. See Salgo v. LeLand Stanford, Jr. University Board of Trustees, 154 Cal.App.2d 560, 317 P.2d 170 (1957); Julien v. Barker, 75 Idaho 413, 272 P.2d 718 (1954); Sanzari v. Rosenfeld, 34 N.J. 128, 167 A.2d 625 (1961).

Appellant also introduced evidence on the theory of the operation of a Bovie machine. Dr. Darner, one of the Appellees, testified to the operation of the Bovie machine in "lay" terms. He stated that "when you deliver the current into

---

1. Since there was no objection at trial based on the hearsay rule, we do not consider such an objection now. Johnston v. Reily, 82 U.S.App.D.C. 6, 160 F.2d 249 (1947).

2. The manuals state at one point, for example, that the contact plates are not to be placed on hairy or scarred areas of the body.

a patient's body if you deliver it over a wide surface, and the entire surface is in contact with the electrode, there will be no burning. * * *" When Dr. Darner was asked how he was familiar with the theory of an electrosurgical machine, he stated that it was developed by one of his former medical chiefs and that he, Dr. Darner, had written a treatise on the subject.

Appellant claims that this expert testimony coupled with evidence in the manuals reduced the question of negligence for the jury to a question of the propriety of the procedure adopted and that it was not necessary thereafter to present expert testimony as to the medical custom of the area. See Washington Hospital Center v. Butler, 127 U.S.App. D.C. 379, 384 F.2d 331 (1967). Appellees contend that there must be expert testimony that the relevant standard of care in the area was not met by these practices. Appellees rely on the fact that the only evidence on this point was the uncontroverted testimony of both the nurse and Dr. Darner that it was accepted medical practice to place the contact plate on the calf. However, "with the technical aspects of the controversy * * * elucidated, the jury's ultimate determination could be fashioned on the basis of what in similar circumstances reasonably prudent men would have done." Id. at 385, 384 F.2d at 337.

■■ The question was not merely what medical standards would guide a practitioner's use of the machine under prevailing local practice but what was prudent in the circumstances in light of whatever special knowledge the jury found was possessed by those performing the procedure. Evidence on both the medical custom in the area and the operation of the Bovie machine were relevant to a resolution of this question. But expert testimony is not always an evidentiary prerequisite for establishing the standard of care in the locality. It is received to help lay jurors understand technical matters beyond their competence, and in the confines of this case it was imperative only that the operation of the Bovie machine be explained to the jury via expert instead of lay evidence. This function was fulfilled in part by the doctor's testimony and in part by the instruction manuals which were prepared by "the engineering staff" (JA 48) of the manufacturer. A jury could reasonably consider that any practice which fell short of complying with such instructions was evidence of negligence.[3]

■ The Appellee hospital has not raised any question concerning its liability for negligent actions of the nurse. Miss Tribles was a hospital employee trained by the hospital to operate its electrosurgical machines. Since there was sufficient evidence on which the jury could find negligence in the application of the plate, the issue was for the jury and the directed verdict as to the hospital must be reversed.

■■ Dr. Darner contends that, even if the nurse acted in a negligent manner in setting up the Bovie machine, he is not liable for her negligence since he was justified in relying on her utilization of the machine as an agent of the hospital. The fact that the nurse is under the doctor's supervision and acts under his orders as to some matters does not make her his agent for all purposes.[4] On the other hand, his supervision of specific conduct of the nurse can make her his agent at the same time that she is the agent of the hospital.[5] Here the evi-

---

3. In the *Washington Hospital* case, *supra*, there was no expert testimony on the medical custom whereas in this case there was evidence that the procedure was in conformity with the custom. But the principle remains that such expert testimony does not replace the jury's function and take the question of the behavior by a "reasonably prudent man" from the jury in a case such as this.

4. *See* Hallinan v. Prindle, 17 Cal.App.2d 656, 62 P.2d 1075 (1936); Porter v. Patterson, 107 Ga.App. 64, 129 S.E.2d 70 (1962).

5. *E. g.,* Dickerson v. American Sugar Refining Co., 211 F.2d 200 (3d Cir. 1954).

dence of agency is that the doctor was in charge of the operation and that he requested the nurse to set up the needed equipment. Miss Trible testified that it is the practice that a nurse set up the Bovie machine in a doctor's absence without specific instructions, and said that she did so in this instance. This is not disputed. As we have noted the doctor first saw the set up of the Bovie machine immediately prior to its use. Because of our disposition we need not determine whether Appellant presented evidence sufficient to support a finding that the nurse functioned as the surgeon's agent since a new trial may develop additional evidence on this claim.

■ There is evidence from which the jury could conclude that the doctor was independently liable because he saw where the contact plate was placed. The nurse stated that he asked her if the contact was good and that she told him to check for himself; she testified he did so. Dr. Darner testified that he did not recall this conversation or these events, but that he checked to see if the contact plate's handle was touching any metal. He also testified that one of the moles was on the leg near the contact plate and that there was nothing between the mole and the contact plate at the time that he removed the mole. From this, the jury could conclude that Dr. Darner had notice of the placement of the plate. And from his testimony about his knowledge of the operation of the machine and his familiarity with the instruction manuals, the jury could conclude that the doctor was knowledgeable in the correct use of the machine. Considered together this testimony was

sufficient to present a factual issue for the jury on Appellant's claim against Dr. Darner.

■ Two evidentiary rulings challenged here may arise if the case is tried again. Appellant sought to show that, prior to her treatment, the nurse was aware that other patients had been burned by the same type of machine at the same hospital when there was insufficient contact with the contact plate. This was excluded as irrelevant. On the assumption that a proper foundation as to the similarity of the circumstances surrounding prior accidents could be presented, and without determining whether some of the proffered testimony would be excludable as hearsay, we hold that such evidence could be relevant in relation to the nurse's notice of the dangers inherent in improper operation of the machine and the reasonableness of the precautions taken in the present use of the machine.[6] After being asked on cross-examination if she used cosmetics on her scar, Appellant attempted to show the jury, on redirect examination, how cosmetics affected the appearance of her leg. Objection to this line of questions was sustained. Such a demonstration might well be proper if conducted under reasonable safeguards and upon a foundation which included testimony as to the appearance of the area without cosmetic aids and visibility of the area under prevailing styles and customs.[7]

Reversed and remanded.

BAZELON, Chief Judge, concurs in the result only.

6. See, e. g., J. WIGMORE, EVIDENCE § 252 n. 6 (3d ed. 1940, Supp.1964), cases cited therein.

7. Testimonial demonstrations of the kind here in question may be admitted under appropriate circumstances but are for the sound discretion of the trial judge. A contest of opposing beauticians is hardly to be encouraged as a general rule.