**Marcia Lynn HILLMAN, Appellant,**

v.

**William FUNDERBURK and the Washington Hospital Center, Appellees.**

**No. 83–658.**

District of Columbia Court of Appeals.
Argued Nov. 29, 1984.
Decided Jan. 31, 1986.

Steven M. Pavsner, Hyattsville, Md., for appellant.

Kenneth W. Curtis, Arlington, Va., for appellee William Funderburk, M.D.

James P. Schaller, with whom M. Elizabeth Medaglia and Timothy R. Dingilian, Washington, D.C., were on brief, for appellee The Washington Hosp. Center.

Before FERREN and ROGERS, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

In a medical malpractice action arising out of a breast reduction operation, appellant made claims of (a) negligence, (b) failure to obtain informed consent, and (c) breach of warranty against appellee Dr. William Funderburk, and made a claim of negligent suturing against appellee Washington Hospital Center (the Hospital). The jury returned a verdict in appellant's favor in the amount of $20,000 on her claim of failure to obtain informed consent. Appellant moved for a judgment notwithstanding the verdict or new trial on her claims of negligence and breach of warranty as to appellee Funderburk, and on her claim of

negligent suturing against appellee Hospital complaining that the verdict was too low. The motion was denied and this appeal followed.[1] Appellant raises two grounds for appeal: first, that the trial court improperly granted the defense request to prohibit appellant from displaying her breasts to the jury; and, second, that the court improperly precluded the testimony of Dr. Chester Haverback in rebuttal. We affirm.

## I

On February 6, 1979, for functional and cosmetic reasons, appellant underwent reduction mammoplasty (breast reduction) surgery. Appellee Dr. Funderburk performed the surgery by following a modified "McKissock" procedure.[2] After the reduction, Dr. Funderburk, assisted by three residents of appellee Hospital, used a mix of stitch types to close each breast, including interrupted vertical mattress sutures and simple sutures.

Following the operation, appellant complained of the placement of her nipples, i.e., that they had been placed too high, and complaints of the amount of scarring from the operation, specifically that she had "track mark" scars as a result of the use of interrupted vertical mattress sutures.

One day before trial began appellees moved in limine to preclude appellant from showing her breasts to the jury. The trial court granted the motion but permitted appellant to attempt over the weekend to get color photographs for use at trial. The photographs appellant obtained were later admitted into evidence.

Appellant's only medical expert witness was Dr. McKissock.[3] He testified that Dr. Funderburk did not follow his McKissock procedure correctly; that the foreseeable result of Dr. Funderburk's modified proce-

---

1. Appellant has not pursued the breach of warranty issue on appeal and we shall therefore not address it.

2. The "McKissock" procedure is named for Paul McKissock, M.D., who developed it.

3. Appellant testified concerning the superior displacement of her nipples and the scars on her breasts as a result of the operation, as well as other things not pertinent to this appeal.

dure was to place appellant's nipples higher than they should be; and that her nipples were substantially higher than they should be as a result of the operation. Specifically, Dr. McKissock testified that appellant's right nipple was approximately 4 to 4.5 centimeters (1.57–1.77 inches) too high and the left nipple was approximately 3 to 3.5 centimeters (1.18–1.37 inches) too high. Dr. McKissock also testified that the use of interrupted vertical mattress sutures in a reduction mammoplasty was beneath the standard of care because of the "unsightly scar[ring]" that results, but that appellant's scarring overall (i.e., scarring from stab wounds necessary for fluid drainage and from all the stitching) was within normal limits.[4]

The defense called three medical expert witnesses, appellee Dr. Funderburk, Dr. Alfred Suraci, and Dr. Hugo Keunen. Dr. Funderburk testified that he modified the McKissock procedure to fit the patient population he normally worked with and that he had good results in the past with the modified procedure. He testified that according to the measurements he took after the operation, appellant's right nipple was one centimeter higher than her left. He opined that from the photograph exhibits it appeared as if the nipples were "at most" 1 to 2 centimeters (less than an inch) higher than ideal positioning, but he added that it was difficult to tell from the photographs. He stated that when he last examined her in June of 1979 she had no visible scars due to the use of vertical mattress sutures and that he could not tell now from the photograph exhibits whether she had any of the "track-mark" scarring characteristic when

such sutures are left in too long or tied too tightly.

Dr. Suraci testified that the foreseeable result of Dr. Funderburk's modified McKissock procedure was to place appellant's nipples too high. As a result of his examination of appellant, Dr. Suraci concluded that, although the elevation was slight, appellant's nipples were, in fact, too high (i.e., 2–3 centimeters), and that appellant had scars from the incisions, from the sutures "more or less," and from the stab wounds for the fluid drains. He opined that it was not a deviation from accepted medical practice to use an interrupted vertical mattress suture stitch, and that, in any event, appellant's scarring was within normal limits. Dr. Suraci recommended corrective surgery and discussed its costs.

Dr. Keunen testified only from the photographs appellant proffered into the record. He concluded that appellant's nipples were "a little too high," (i.e., 2–3, possibly 4 centimeters), although he could not say by exactly how much,[5] and that her overall scarring was "very good" and within normal limits.

Appellant sought to call Dr. Chester Haverback as a rebuttal witness, proffering that he would refute certain defense contentions, viz., that (1) appellant's photographs were "misleading" and did not fairly and accurately depict nipple placement; (2) the suture scars were hardly visible in person and the overall scarring was very good; (3) Dr. Funderburk's operative plan, though nowhere sanctioned in its literature, was within the standard of care as derived from scientific meetings of the medical

4. Appellant's contention regarding the scarring is that the type of sutures used around her areolae, interrupted vertical mattress sutures, were negligently selected and negligently put in, and that although her scarring overall was within normal limits, it was not as good as it would have been in the absence of negligence.

5. Dr. Keunen also said that some of appellant's photographs were misleading because of the manner in which appellant wore her clothing in the photographs. Regarding a photograph in

which appellant wore a halter top dress he stated:

A. Yes, I don't know how she puts this dress on, you know. She may have put it on very low. It's hard for me to say looking at these photographs. I cannot really put—the way it is here, you see the nipples.

It doesn't look good. I agree with you on that. I don't know how this dress was put on or how the photographs were taken. So, I think these are not very—it is not a fair way to present [it] in my opinion.

community; and (4) the corrective surgery proposed would cost no more than $5,200. The trial judge excluded the proposed rebuttal testimony.

The jury was given a special verdict form with several questions. The jury found for the plaintiff on the claim against defendant Funderburk on only one of the three claims, viz., lack of informed consent. The remaining two claims pertained to negligence and breach of warranty. The jury was instructed by the court that:

Now, if from the evidence and other instructions of the Court you find in favor of the plaintiff, then in assessing the damages to which she is entitled, you may take into consideration any of the following which you believe proximately resulted from *either the negligence, breach of warranty or failure to give informed consent* of the defendant or defendants, *three of which*, of course, *are related solely to defendant Funderburk and only Washington Hospital Center in their area of negligence alleged, the extent and duration of any bodily injury sustained, the effects such injuries have on the overall physical and mental health and well being of the plaintiff, any physical pain and mental anguish the plaintiff has suffered, and physical pain and mental anguish the plaintiff will probably suffer in the future, any disfigurement or deformity and any humiliation or embarrassment associated with it, any inconvenience or discomfort that has been suffered by the plaintiff, any inconvenience or discomfort that plaintiff will probably suffer in the future, any medical expenses that the plaintiff will probably incur in the future.*

*If a plaintiff suffers physical injuries which cause secondary physical effects, or nerves or emotional distress, she may recover damages for such effect and emotional distress.* There can be no recovery, however, for negligently caused mental pain, suffering, distur-

bance or emotional distress unless ‹it is the result of a physical injury. [Emphasis added.]

The jury restricted its verdict for the plaintiff to the claim of lack of informed consent, and, pursuant to the foregoing instructions on damages, awarded plaintiff damages in the amount of $20,000. No verdict was returned against the Washington Hospital Center.

II

Appellant's first contention is that the trial judge committed reversible error when he granted appellees' pre-trial motion to preclude appellant from showing her breasts to the jury. According to Professor Wigmore, as a general rule, a plaintiff's exhibition of his or her injury to the jury in a personal injury action is always proper, unless specific reasons of policy apply to prohibit it. 4 WIGMORE ON EVI-DENCE, § 1151 (Chadbourn rev. 1970); 6 A.L.R.2d 1336 § 2. This is so, it is said, because "[t]here is no other class of evidence more satisfactory or convincing ... than the production and inspection of the very object or person whose condition is being investigated...." *Calumet Paving Co. v. Butkus,* 113 Ind.App. 232, 237, 47 N.E.2d 829, 831 (1943). Although this court has apparently not before decided the question, the United States Circuit Court has acknowledged its appropriateness in this jurisdiction. In *Monk v. Doctors Hospital,* 131 U.S.App.D.C. 174, 403 F.2d 580 (1968), although an objection was sustained to a testimonial demonstration of how cosmetics affected the appearance of the plaintiff's burned leg, the appeals court noted that such exhibitions "may be admitted under appropriate circumstances but are for the sound discretion of the trial judge." *Id.* at 178 n. 7, 403 F.2d at 584 n. 7. Indeed, courts considering such exhibitions have approved, or at least recognized the propriety of, the grant of permission to the plaintiff to display his or her injury to the

jury.[6] It is permissible practice to allow the display. *E.g., Darling v. Charleston Community Memorial Hospital,* 50 Ill. App.2d 253, 200 N.E.2d 149, 185 (1964), *aff'd on other grounds,* 33 Ill.2d 326, 211 N.E.2d 253 (1965), *cert. denied,* 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966).

■ It is equally well-settled, however, that the decision whether to permit the display is committed to the sound discretion of the trial judge. Barring overriding considerations, it is sensible to permit a physical exhibition, particularly where the examination will aid the jury in understanding the evidence and assessing damages. Trial courts, of course, may sometimes refuse to permit the exhibition. Permission is occasionally denied on one of the two following grounds: unfair prejudice to the defendant or indecency. However, it should be noted that authorities generally are unpersuaded by the first[7] and only in "extreme cases" will courts rely on the "indecency" of the showing to deny the proffer.[8]

Hence, we turn to consider on what basis the trial court denied appellant permission to exhibit her injury and whether that basis justifies denying appellant to resort to what has been described as "evidence of a very high degree." *Chicago, Rock Island & Gulf Railway Co. v. DeBord,* 62 Tex.Civ. App. 302, 132 S.W. 845 (1910). We stop briefly to note that whether trial judges abuse their discretion requires a two-part analysis. *United States v. Johnson,* 398 A.2d 354, 364 (1979). First, we ascertain whether the exercise of discretion was in error, and, if it was, we look secondly, for prejudice occasioned by that error. Only where the error has unduly prejudiced the complaining party do we find an abuse of discretion and mandate reversal. *Id.*

In ruling in this case to prohibit appellant from exhibiting her injury to the jury, the trial judge stated:

There is and can be a very real prejudice in the court's mind of a comparison of a real situation of the nature that we have, when you compare it to a photographic situation of before and what a real situation can look like. I know, and the answer can be, "Well, Judge, we do it every day in other situations." I understand the other side of the argument but, I think in an incident like this, when we have the added element of a private part of the body, such as this, to be exposed

---

6. *See, e.g., Rich v. Ellerman and Bucknall S.S. Co.,* 278 F.2d 704, 707–08 (2d Cir.1960).

7. *See* WIGMORE ON EVIDENCE, § 1158 (4th ed. 1972), where it states:

§ 1158. *Unfair prejudice to a civil defendant, in personal injury cases.* In civil actions, an objection has often been made, on [unfair prejudice] grounds, to the exhibition of his corporal injuries by one suing for compensation.

This objection . . . assumes that there is a double risk; the jury may heedlessly conclude, it is thought, first, that because the injury is perfectly patent therefore the defendant is to blame for it, and, secondly, that since the plaintiff is truly in a pitiable plight, someone at least should be found to compensate him, and the defendant rather than anyone else; both of these risks being particularly great in actions against a corporation or a moneyed individual.

No doubt there is in such cases a constant tendency to render verdicts against defendants regardless of proved culpability; no doubt the danger is of greater frequency here than in [criminal] cases; and no doubt the trial court has a discretion, which it should firmly exercise, to prevent the abuse of such a mode of proof. But it seems too rigorous to forbid a party to prove his case by the clearest evidence; and a jury which through violent prejudice would not be restrained by the court's instructions would probably give way to its prejudice even without this evidence. The courts impose no prohibition, except so far as the discretion of the trial court may prevent abuses. [Footnotes omitted.]

*See Magnolia Petroleum Co. v. Angelly,* 306 P.2d 309 (Okla.1955) (no error in permitting plaintiff, a minor, who had been severely burned to remove all of his clothing to display to the jury the full area of his burns; court rejected defense contention that the display was unnecessary and only served the purpose of arousing jury's sympathy since defense counsel had offered to stipulate to the extent of the injury as well as to plaintiff's pain and suffering); *Cf. Wagner v. Chicago, R.I. & P. Ry. Co.,* 277 Ill. 114, 115 N.E. 201 (1917). *See also* Annot., 66 A.L.R.2d 1351.

8. *See, e.g.,* Annot., 66 A.L.R.2d 1336, 1354–55.

to the jury, that the plaintiff will have to rely on the photographs....

Now that's my ruling and it would take something awfully strange at trial to have me change that ruling.... So, that's my decision and just say "embarrassed by viewing...."

After review of the trial court's ruling in this case, it is not entirely clear to us why the trial judge declined to permit the jury to observe the breast damage alleged by plaintiff to result from the operation. There was nothing gruesome or inflammatory involved. The jury, court, and counsel could have quite briefly observed the plaintiff in a private anteroom under appropriately controlled circumstances, without a risk of uncalled for indecency. In the particular circumstances of this case, to have permitted the controlled observation, in our view, would have been neither indecent nor unduly prejudicial to either party.

As it happened, however, the plaintiff was restricted to the use of photographs to support her claim of damages. As a result, when it suited their current purposes, both parties alternately have attacked the reliability of the photographs at various stages of the litigation.[9] This sort of tactics would have been avoided by a personal viewing.

■ The fact remains, however, that we have reviewed the various photographs of the breasts which were received in evidence. A look at these photos reveals they portrayed the breasts quite adequately for a reasonable jury assessment of liability and damages. We have no reasonable basis for concluding in this case that the jury verdict on damages was adversely affected by the court's restriction to the use of photographs. We conclude there was no abuse of discretion by the trial judge in not permitting the physical viewing in this particular instance.

**9.** For almost any criticism of the photos, there is another indication of their adequacy. For example, appellant herself stated the photos accurately portrayed what her breasts look like.

■ We conclude, also, that the court could properly decline to permit plaintiff to present the proffered rebuttal expert testimony. We note that the plaintiff had originally listed the medical expert as a witness but later had deleted his name on the pretrial statement. He was an expert witness who, in addition, had not been subject to discovery along with the other experts in this case. Importantly, in denying the request the court concluded that his testimony would not be "in the nature of true rebuttal." *See, e.g., Brennan v. Jones,* 176 A.2d 877, 878 (D.C.1962). We believe there was no abuse of discretion in declining to permit this expert testimony in the circumstances of this record.

Essentially, appellant is complaining that the verdict was too low in this case, and that inadequate damages resulted because of the errors alleged in the admission of evidence and prevention of the rebuttal testimony. We conclude (a) the jury was adequately instructed, especially on damages, and that (b) there is no sufficient basis for us to conclude that the exclusion of the evidence prejudicially affected the amount of damages awarded, to the detriment of appellant. We find no abuse of discretion—the photographs were reasonably adequate to assess liability and damages. Finally, the exclusion of the rebuttal testimony also was not an abuse of discretion under the circumstances.

Accordingly, the judgment appealed from is

*Affirmed.*

Appellant herself testified the photos showed the nipples are too high to wear a halter (this misplacement being a primary issue).