Julian **RILEY,** Everett L. Allen, III, Linwood T. Davis, Appellants,

v.

**UNITED STATES,** Appellee.

Nos. 92–CF–1230, 92–CF–1268 and 92–CF–1557.

District of Columbia Court of Appeals.

Argued June 8, 1994.

Decided Sept. 22, 1994.

---

R. Kenneth Mundy for appellant Riley.

Dennis M. Hart for appellant Allen.

Mindy A. Daniels for appellant Davis.

Roy W. McLeese, III, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher and Renate D. Staley, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN,* SCHWELB, and KING, Associate Judges.

PER CURIAM:

■ The convictions of appellants Riley and Davis and all convictions of appellant Allen, except the conviction for subornation of perjury, are affirmed for the reasons set forth in the opinion by Judge King which is joined (except as to Allen's subornation conviction) by Judge Ferren and Judge Schwelb. The conviction of appellant Allen for subornation of perjury is reversed for the reasons set forth in the separate opinions of Judge Ferren and Judge Schwelb; Judge King dissents from the reversal of that conviction for the reasons set forth in his separate opinion.

No. 92–CF–1230

*Affirmed.*

No. 92–CF–1268

*Affirmed in part, reversed in part.*

No. 92–CF–1557

*Affirmed.*

KING, Associate Judge:

Appellants Julian Riley, Everett Allen III, and Linwood Davis[1] were charged with armed assault with intent to kill,[2] armed mayhem,[3] possession of a firearm during a crime of violence ("PFCV"),[4] and carrying a pistol without a license ("CPWL")[5] based on their alleged participation in the shooting of Pernell Gibson on February 12, 1991. In addition, Riley, Davis, and Murphy were charged with perjury before the grand jury, and Allen and Davis were charged with subornation of perjury[6] and obstruction of justice[7] for their actions related to witnesses subpoenaed to testify before the grand jury.

Riley was convicted of armed assault with intent to kill, armed mayhem, PFCV, CPWL, and perjury. Allen was convicted of simple

---

* Judge FERREN was *Acting Chief Judge* at the time of argument. His status as an *Associate Judge* resumed on June 14, 1994.

1. A fourth co-defendant, Hampton Murphy, was also convicted of several offenses and his appeal was originally consolidated with the other appellants; however, on June 21, 1994, Murphy filed an unopposed motion for remand, which we granted.

2. D.C.Code §§ 22–501, –3202 (1989 & 1994 Supp.).

3. D.C.Code §§ 22–502, –3202 (1989 & 1994 Supp.).

4. D.C.Code § 22–3204(b) (1994 Supp.).

5. D.C.Code § 22–3204(a) (1994 Supp.).

6. D.C.Code § 22–2512 (1989).

7. D.C.Code § 22–722 (1994 Supp.).

assault as a lesser included offense of armed assault with intent to kill, obstruction of justice, and subornation of perjury. Davis was convicted of simple assault as a lesser included offense of armed assault with intent to kill, obstruction of justice, perjury, and attempted subornation of perjury as a lesser included offense of subornation of perjury.

On appeal, Allen contends there was insufficient evidence to convict him of obstruction of justice. Davis contends the trial court erred both in admitting inadmissible hearsay and in permitting the victim to display his wound to the jury. He also contends that there was insufficient evidence to convict him of subornation of perjury and obstruction of justice. Finally, Allen and Davis claim that since some of their convictions merge with each other, the trial court erred in imposing separate sentences for each offense.[8] We find no reversible error with respect to any of these claims.[9] Accordingly, we affirm each of those convictions. Appellant Allen also claims there was insufficient evidence to convict him of subornation of perjury. That conviction, for the reasons set forth in the separate opinions of Judge Ferren and Judge Schwelb, is reversed; I dissent for the reasons set forth in Part II.A. of this opinion.

## I.

At trial the government presented the following facts. On February 12, 1991, appellants, members of a group known as the "Q Street Gang," were at Allen's home playing video games.[10] During the course of the day, the gang members passed around Allen's .38 pistol. At some point, Allen received a phone call, became upset by the conversation that took place during the call, and then began to leave, stating he was going to go fight Pernell Gibson. The gang members followed, and as they left the room Allen handed the weapon to Riley, who took the weapon with him. The group walked to a nearby corner, and Allen entered a restaurant, returning a few moments later with Gibson. A fight ensued between the two, and the other gang members formed a circle around the fighters, occasionally throwing punches at Gibson. After Allen fell to the ground, Riley pulled out the pistol and shot Gibson at point-blank range in the face. The gang members then fled, meeting later that day at a Virginia hotel where they watched television for news of the shooting. All returned to their homes in the Q Street area in the days following.

During the police investigation of the shooting, each gang member was called to

8. Allen contends his convictions for obstruction of justice and subornation of perjury merge. In light of the majority's reversal of the latter conviction, that contention is moot. Davis, however, contends his convictions for obstruction of justice and attempted subornation of perjury merge. To determine whether the same act constitutes a violation of two distinct statutory provisions, the test is "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). We recently held that subornation of perjury "deal[s] with a wide variety of statements under oath, covers a multitude of instances which would not be reached by [the obstruction of justice statute], and the latter section likewise covers far more than attempts to seek false testimony." *Smith v. United States*, 591 A.2d 229, 232 (D.C.1991) (citation omitted). Accordingly, because subornation of perjury and obstruction of justice require proof of an element the other does not, the offenses do not merge, and the trial court would be free to impose separate sentences for each. The same result necessarily follows for the conviction of Davis for attempted subornation of perjury and obstruction of justice.

9. Riley also appeals his convictions, contending the trial court improperly allowed "other crimes" evidence to be introduced against him. During cross-examination of Riley's former girlfriend, Nanette Williams, Riley's counsel attempted to show that Williams had a motive to lie because she was angry he had broken off the relationship. On re-direct the government then sought to establish the circumstances surrounding the termination of the relationship, during the course of which Williams testified that Riley had beaten her in the past. Although we are not convinced this testimony constitutes "other crimes" evidence, *see Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964), we need not decide that issue because we are satisfied if there was error, it was harmless.

10. Included in the group gathered at Allen's home were Hampton Murphy, (whose appeal is no longer consolidated with the present action), *see supra* note 1; and Dwayne Corley, (a gang member who testified, pursuant to a plea agreement, for the government).

testify before the grand jury. Before any of them had testified, they agreed among themselves that each would deny being at the scene of the shooting and that each would give a different story regarding his whereabouts at the time of the offense.

At trial, the government presented the testimony of Dwayne Corley, a member of the Q Street Gang who was present both at Allen's home and at the shooting. Corley identified each appellant and placed each at the shooting scene. An expert in neurology and traumatic brain injury testified in detail that Gibson's wound had caused extensive and permanent brain damage and had resulted in the loss of his right eye, which was surgically removed. The expert also testified that Gibson's face had suffered severe fractures from the exit wound, requiring numerous operations. Gibson then testified, during which, over defense objections, he lifted his eyepatch in order to show his wound to the jury.

Allen's girlfriend, Rhonda Ford, testified that Allen had told her she should not tell the grand jury anything she knew about the shooting. Ford admitted that when she was asked the identity of the shooter, she initially lied to the grand jury. Similarly, Sylvia Norris testified that Davis told her to tell the grand jury he was with her the day Gibson was shot, a fact that was not true. Norris, however, testified truthfully at her grand jury hearing. The subornation of perjury charges arose from Allen's conversation with

Ford and Davis' conversation with Norris before the two women testified before the grand jury. These appeals followed.

## II.

### A. Allen

Allen contends the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to convict him of subornation of perjury.[11] This charge was based on the testimony by Allen's girlfriend, Rhonda Ford, who was subpoenaed to testify at the grand jury and was later called as a witness at trial. As noted, Allen's conviction for that offense is reversed for the reasons set forth in Judge Ferren's and Judge Schwelb's separate opinions. I, however, would affirm for the following reasons.

Viewing Ford's trial testimony in the light most favorable to the government, as we must, *In re T.M.*, 577 A.2d 1149, 1151 (D.C. 1990), the following emerges: Some time before Ford testified before the grand jury, Allen told her the name of the person who had shot Gibson. Later, when she informed Allen that she had been subpoenaed, Allen told her "[d]on't be scared, they're just trying to scare you. Don't tell them nothing." When Ford appeared before the grand jury the first time,[12] the prosecutor asked her whether Allen had told her the identity of the shooter. Instead of answering that question

---

**11.** Allen also contends there was insufficient evidence that he obstructed justice. D.C.Code § 22–722(a)(2) provides that a person is guilty of obstruction of justice if that person "uses intimidating or physical force, threatens or corruptly persuades another person ... endeavors to influence, intimidate, or impede a witness." Allen claims Ford "consistently maintained that [Allen] had *never* utilized any form of threats or violence to discourage her participation before the grand jury." Allen was not convicted, however, of using threats or force. Rather, he was convicted of that portion of the statute punishing one who "corruptly ... endeavors to influence ... a witness ... with intent to ... [c]ause or induce the person to withhold truthful testimony." D.C.Code § 22–722(a)(2)(B). The word corruptly "[w]hen used in a statute ... generally imports a wrongful design to acquire some pecuniary or other advantage." BLACK'S LAW DICTIONARY 345 (6th ed. 1990). *See also United States v. Poindexter*, 292 U.S.App.D.C. 389, 398, 951 F.2d 369, 378 (1991) ("A corrupt intent may also be de-

fined as the intent to obtain an improper advantage for oneself....") (internal quotation marks and modification omitted) (citation omitted). Viewed in the light most favorable to the government, a reasonable jury, after hearing Ford's testimony, could view Allen's statement to her as an effort to corruptly influence Ford to withhold the information from the grand jury that Allen had disclosed to her—even if it required her to lie.

**12.** Before her first appearance at the grand jury, Ford told a girlfriend what Allen had told her about the identity of the shooter. After her first grand jury appearance, she learned that the girlfriend had related what Ford had told her to the police. Ford realized she had not been truthful at her first grand jury appearance; she also knew that the police now knew that she had been untruthful. She then returned to the grand jury and gave truthful testimony on that point.

directly, Ford testified that Allen had told her Riley did not do it—a statement she knew to be untrue because Allen had told her that Riley shot Gibson. At trial, Ford admitted she "wasn't telling the truth" during her grand jury testimony on that point and that Allen had in fact identified the shooter to her prior to her first appearance at the grand jury.

D.C.Code § 22–2512 provides that "[a] person commits the offense of subornation of perjury if that person wilfully procures another to commit perjury." The conduct that is prohibited by this section is the act of "procuring" perjury. "This term is intended to be broadly interpreted to include instigating, persuading, or inducing another by *any* means to commit perjury." DISTRICT OF COLUMBIA THEFT AND WHITE COLLAR CRIMES ACT OF 1981, EXTENSIONS OF COMMENTS ON BILL 4–133, at 92 (July 20, 1982) (Remarks of Councilmember Clark) ("Clark") [Emphasis added]. To that end the jury was instructed, without objection, that procured means "caused [the witness] to commit perjury." The term "wilfully" is intended to mean "knowingly, or intentionally." *Id.* To convict of subornation of perjury, it is also essential that the person procuring the perjury know or have reason to believe the testimony given would be false and that the witness know that the testimony is false. *Id.* at 91.

Although I believe this issue to be a close one, I am nevertheless satisfied that under our standard of review the evidence was sufficient to establish that Allen suborned the perjured grand jury testimony of Ford. Ford testified that Allen had told her Riley was the shooter. Subsequent to that conversation with Allen, Ford was subpoenaed to appear before the grand jury. When Ford informed Allen that she had been subpoenaed, Allen told her: "Don't tell them nothing." Ford then went before the grand jury and lied about the identity of the shooter.

Viewed in the light most favorable to the government, a reasonable juror could find that Allen's statement to Ford was intended by Allen to convey to Ford the message that she should not inform the grand jury what he had told her about the identity of the shooter—even if she had to lie. Ford then enjoyed a close relationship with Allen, being his girlfriend and the mother of his child. Under these circumstances, the jury could reasonably conclude that Allen expected Ford would be asked at the grand jury hearing what Allen had told her about the identity of the shooter. The jury could also reasonably infer that Allen's order was intended to convey to Ford that she should falsify her testimony, if necessary, in order to "tell them nothing."

Although case authority on this issue is sparse, support can be found in *Petite v. United States,* 262 F.2d 788, 796 (4th Cir. 1959), *remanded on other grounds,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960), where the court approved a jury instruction in which the trial court told the jury that:

> A defendant may be guilty without having instructed the witness what to say.
>
> [One] may be guilty of subornation of perjury even though he has not instructed the witness to say so [,] if he knows that the testimony the witness is going to give is false and if he knows that the witness knows that it is false and yet causes or induces the witness to do it. . . .

Here Allen did not specifically instruct Ford to lie. But he did order: "Don't tell them nothing," and Ford certainly understood that to mean she was not to tell the grand jury the truth concerning what Allen had told her about the shooter's identity. She followed his orders; she told "them" nothing that incriminated Allen, and in doing so lied about what he had actually said. On these facts, the jury could reasonably infer that lying was the precise result intended by Allen.

Thus, as the court instructed, Allen "caused Rhonda Ford to commit perjury" and, the other elements having been established, he therefore committed subornation of perjury. In my view, this evidence was sufficient for a jury to find, beyond a reasonable doubt, that Allen's order to Ford, broadly construed, constituted "instigating, persuading, or inducing another by any means to commit perjury." *Clark, supra,* at 92. *See also People v. Sesi,* 101 Mich.App. 256, 300 N.W.2d 535, 539 (1980) ("Subornation [of perjury] can be generally defined as procuring or inducing an improper or unlawful act.");

*Jones v. State,* 466 So.2d 293, 294 (Fla.Dist. Ct.App.1985) (solicitation of perjury is completed when a person entices, advises, incites, orders, or otherwise encourages a person to commit perjury) (citations omitted); *State v. McBride,* 15 N.C.App. 742, 190 S.E.2d 658, 659 (1972) (subornation is procuring or inducing a person to commit perjury) (citation omitted); *Commonwealth v. Mervin,* 230 Pa.Super. 552, 326 A.2d 602, 604 (1974) (subornation requires "proof that the accused induced, persuaded, and instigated the witness to commit the crime of perjury"); *State v. Devers,* 260 Md. 360, 272 A.2d 794, 800 (1971) ("Subornation is the procurement of another to make false oath") (citation omitted). For these reasons, I would affirm the subornation of perjury conviction.

### B. Davis

First, Davis contends there was insufficient evidence to convict him of attempted subornation of perjury or obstruction of justice.[13] He was indicted for "willfully procuring Sylvia Norris to commit perjury." At trial, Norris testified that Davis had told her to tell the grand jury he was with her when Gibson was shot, even though it was not true. The prosecutor then asked Norris whether she knew that "when he was speaking to you you understood that you were supposed to come to the grand jury and say something that wasn't true?" Norris acknowledged that was her understanding. Norris, however, testified truthfully before the grand jury regarding Davis whereabouts on the day of the shooting. Since there was no actual perjury by Norris, the government conceded that the subornation of perjury charge had not been established. The government then sought an instruction for attempted subornation of perjury. The trial court entered a judgment of acquittal on the subornation of perjury charge, but instructed the jury on attempted subornation of perjury, and the jury convicted on that charge.

We have never considered the question whether attempted subornation of perjury is an offense against the law of the District of Columbia. The Maryland Court of Special Appeals has held that "[t]he attempt to suborn a prospective witness to commit perjury . . . is a common law crime separate and distinct from subornation of perjury." *Tipton v. State,* 8 Md.App. 91, 258 A.2d 606, 609 (1969) (internal quotation marks and citation omitted).[14] The offense

---

**13.** We find no merit in Davis' contentions the trial court erred in admitting other crimes evidence and in denying his motion to suppress his grand jury testimony, which he claims was obtained in violation of the Sixth Amendment. As to his contention he was prejudiced when Williams testified that Davis was present when Riley physically abused her, we note that the evidence does not even constitute "other crimes" evidence against Davis because there was no testimony concerning any offense committed by him. Nevertheless, we are satisfied, as with Riley's claim with respect to the same evidence, that if there was any error, it was harmless. *See supra* note 9.

It is well settled that a grand jury witness, even if targeted for possible prosecution, has no right to counsel when appearing before the grand jury. *See United States v. Mandujano,* 425 U.S. 564, 580, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212 (1976) ("To extend [*Miranda*] concepts to questioning before a grand jury inquiring into criminal activity under the guidance of a judge is an extravagant expansion never remotely contemplated by this Court. . . ."). Moreover, the government fully informed Davis of his right to refuse to answer questions during the course of his appearance before the grand jury. *See United States v. Washington,* 431 U.S. 181, 188, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977) ("Indeed, it seems self-

evident that one who is told he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled.").

Finally, Davis contends the trial court erred in admitting inadmissible hearsay. At trial, an eyewitness to the fight identified only Allen and Riley as individuals who had struck Gibson. The government then called Detective Vernon Jones to testify that the witness had previously made an out-of-court identification of Davis as being involved in the fight. Since there was no objection on the ground asserted here, the defense did not properly preserve this argument. Thus, our review is for plain error, which we do not find. Moreover, because the witness did not repudiate his prior out-of-court identification and was available for cross-examination on the point, Jones' testimony was admissible under the prior identification exception. *See Paris v. United States,* 515 A.2d 199, 205 (D.C.1986).

**14.** We have observed that "when there are no District cases squarely on point, and in the absence of appellate or other authority in this jurisdiction, this court may give Maryland law special attention because the District was carved out of Maryland and derives its common law from that State." *Hill v. Maryland Casualty Co.,* 620 A.2d 1336, 1337 n. 3 (D.C.1993) (internal quotation

of attempted subornation of perjury "draws its elements from the general crime of attempt and from the specific offense of suborning perjury." *State v. Gibson*, 106 Idaho 491, 681 P.2d 1, 2 (Ct.App.1984). D.C.Code § 22–103 (1989) provides that "[w]hoever shall attempt to commit any crime ... shall be punished." The elements of an attempt to commit a crime are an intent to commit it and the doing of some act towards its commission which goes beyond mere preparation, *see, e.g., Gibson, supra,* 681 P.2d at 2; whereas, subornation of perjury is committed when a person wilfully procures another to commit perjury. D.C.Code § 22–2512 (1989). Thus, the offense of attempted subornation of perjury links the intent to procure false testimony "with the act of soliciting an agreement to testify falsely, although such testimony is ultimately not given." *Gibson, supra,* 681 P.2d at 2. The trial court instructed the jury on both the law of attempt and the offense of subornation of perjury.[15] We hold, therefore, that the offense of attempted subornation of perjury was properly before the jury and, viewing the evidence in the light most favorable to the government, a reasonable juror could find that Davis attempted to procure the perjurious grand jury testimony of Norris.[16]

### III.

We also find no merit in Davis' contention that the trial court erred when it allowed Gibson to remove his eye patch and show his eye socket to the jury. He contends exposing the wound to the jury was inflammatory and cumulative to the testimony of the expert witness. The government maintains that his display "properly demonstrated the permanency of Gibson's injury—an element of mayhem while armed—and was real evidence of his disfigurement."

 The decision whether to admit demonstrative evidence is within the trial court's sound discretion. *See Hammond v. United States,* 501 A.2d 796, 798 (D.C.1985) (citations omitted). After viewing Gibson's disfigurement out of the jury's presence and finding that it was neither "gory" nor "attractive," the trial judge permitted Gibson to display his wound on the ground that the government is required to prove "permanent disabling injury" for a mayhem charge. Although we have not previously considered whether bodily demonstrations are permitted in criminal cases,[17] we see no significant difference between Gibson's display of his injury on one hand and the admission of a photograph of that same injury on the other hand. Photographs are admissible "so long as they have some probative value and are not intended solely to inflame the jury." *Womack v. United States,* 339 A.2d 37, 38 (D.C.1975) (citations omitted). *See also Dixon v. United States,* 565 A.2d 72, 76 (D.C.1989) ("Some types of cases, particularly those involving tragic ... injury, have an inherent emotional

---

marks and alterations omitted) (citation omitted). *See also,* D.C.Code § 49–301 (1989).

**15.** Davis also maintains the "court's instruction [on attempted subornation of perjury] ... constituted a variance and constructive amendment to the indictment" that charged the completed crime. We recently held that "a defendant's Fifth Amendment right to indictment by a grand jury will not be violated ... as long as [the indictment] alleges the essential elements of the charged offense ... and does not broaden the charges against the defendant." *Williams v. United States,* 641 A.2d 479, 482 (D.C.1994) (internal quotation marks omitted) (citations omitted). Because attempted subornation of perjury is the inchoate form of subornation of perjury, Davis' claim that he did not have notice to defend himself of that charge is without merit. *See Ray v. United States,* 575 A.2d 1196, 1199 (D.C. 1990) (every offense committed includes an attempt to commit that offense). Thus, his convic-

tion of an attempt to commit the offense charged did not constitute either a variance or constructive amendment of the indictment.

**16.** We are likewise satisfied a reasonable juror could find Davis guilty beyond a reasonable doubt of obstruction of justice. Norris testified that Davis told her to lie to the grand jury. Moreover, she stated that on the day she was to testify she and Davis fought about her testimony and she left the vehicle and skipped testifying that day. Viewing the evidence in the light most favorable to the government, a reasonable juror could have inferred that Davis obstructed justice. *See* D.C.Code § 22–722(a)(2) (person obstructs justice if he endeavors to impede, influence, or intimate by threats or force, any witness).

**17.** In civil cases, the display of injuries has been permitted when doing so aids the jury in understanding the evidence. *See Hillman v. Funderburk,* 504 A.2d 596, 599–600 (D.C.1986).

impact."). Thus, we hold that if in the sound discretion of the trial court, the probative value outweighs the prejudicial impact, the display of injuries to the body is admissible. *See Monk v. Doctors Hosp.,* 131 U.S.App. D.C. 174, 178, 403 F.2d 580, 584 (1968) (such demonstrations must be conducted under reasonable safeguards and with the proper foundation). Being satisfied the trial court properly weighed probativeness versus prejudice, we conclude there was no abuse of discretion in allowing the victim to display his wound to the jury. *See Pittman v. United States,* 375 A.2d 16, 19 (D.C.1977) (citations omitted).

FERREN, Associate Judge, with whom SCHWELB, Associate Judge, joins:

■ I write separately to express my own reasons for concluding that appellant could not be found guilty of suborning perjury.

A defendant is guilty of subornation of perjury only if he or she "knows that the testimony the witness is going to give is false." *Petite v. United States,* 262 F.2d 788, 796 (4th Cir.1959), *remanded on other grounds,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). *See also Niehoff v. Sahagian,* 149 Me. 396, 103 A.2d 211, 213 (1954) ("It is essential to the crime of subornation of perjury that the suborner procured another to give testimony *known by him [or her] and such other to be false* and that such false testimony was in fact given.") (emphasis added); 60A AM.JUR.2D *Perjury* § 122 at 1143 (1988) ("An essential element of the offense of attempting to suborn perjury is that the accused knows that the testimony that he [or she] wants the witness to give is false."). Here, there is no evidence that Allen knew the testimony Ford was going to give would be false. In fact, there is no evidence that Allen knew anything at all about Ford's prospective testimony, or that he attempted to influence her to testify "in a certain way." CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW, § 607 at 330 (14th ed. 1981 & Supp.

1993) (hereafter "WHARTON"). We do not know what testimony Allen wanted Ford to give. We only know that Allen wanted Ford to give no testimony. One cannot reasonably infer from a mere directive to a witness not to speak that the person giving the directive *knows* that the witness will speak *falsely*. The witness may speak falsely; or she may not speak at all. Allen thus lacked the requisite knowledge that Ford would testify falsely. The government has proved only that Allen suborned silence. Because there is no evidence that Allen intended Ford to relay a specific falsity (or any falsity) when he told her, "Don't tell them nothing," as a matter of law Allen cannot be convicted for subornation of perjury.[1]

■ Allen, however, can be convicted of obstruction of justice. By telling Ford, "Don't tell them nothing," Allen "[c]orruptly ... endeavor[ed] to influence, intimidate, or impede" a witness "in the discharge of his or her duties." D.C.Code § 22–722 (1989). "It is obstruction of justice ... to influence or attempt to influence a witness in respect of the testimony he [or she] will give ... or to induce or attempt to induce a witness to absent himself [or herself] and therefore not to give any testimony at all...." WHARTON, § 589, at 299 (footnotes omitted). Allen's actions clearly fall within the definition of this crime: he corruptly influenced Ford to carry out her duties as a witness improperly.

SCHWELB, Associate Judge, with whom FERREN, Associate Judge, joins:

Judge FERREN and I—a majority of the court—vote to reverse Allen's conviction for subornation of perjury. In all other respects, we join Judge KING's lead opinion.

If Allen did not want his girlfriend to tell the grand jury certain facts—and he evidently did not—he could strive to accomplish this goal in two different ways. One alternative open to him was to tell Ms. Ford to lie. The second was to urge her not to tell the grand

1. The actions of Allen's co-defendant, Linwood Davis, present a true example of conduct which amounts to subornation of perjury. When Davis told Sylvia Norris to testify that Davis was with Norris on the day of the shooting, he was affirmatively asking her to lie—and he knew exactly what that lie was.

I am not suggesting, of course, that a suborner of perjury must have knowledge of the precise falsity to which the witness will testify. The defendant only must know that, if the witness follows the suborner's instructions, the resulting testimony will be false. Here, that is simply not the case.

jurors anything. The first of these alternatives is subornation of perjury. The second is not.

According to Ms. Ford, Allen told her "don't be scared, they're just trying to scare you. *Don't tell them nothing!*" (Emphasis added). The clear import of these words is that he selected the second alternative. In fact, if Ms. Ford had followed his instructions literally, and if she had told the grand jury nothing, she could not have committed perjury at all. "Obviously, the omission of testimony lacks an essential element of perjury." *Coleman v. State,* 668 P.2d 1126, 1136 (Okl. Cr.App.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed.2d 222 (1984). "Of course, one can be convicted of perjury only for knowingly and wilfully making a materially false statement under oath, *and not for a refusal to testify.*" *King v. State,* 238 Ga. 386, 233 S.E.2d 340, 340 (1977) (emphasis added).

If Ms. Ford had asked Allen what she should do if she were compelled to answer questions before the grand jury, Allen might (or might not) have told her to lie. We do not know what he would have said or done in that eventuality, however, because the conversation never proceeded to that point. The government's attempt to convert what Allen did say ("tell them nothing!") into something he did not say ("lie to them!"), essentially by arguing that the jury could assume that the unsaid words are what Allen meant all along, is unpersuasive in the context of a criminal prosecution, particularly for perjury or subornation thereof. "Especially in perjury cases, defendants may not be assumed into

the penitentiary." *United States v. Brumley,* 560 F.2d 1268, 1277 (5th Cir.1977).

The requirements of proof in a perjury case "are the strictest known to the law, outside of treason charges." *State v. Olson,* 92 Wash.2d 134, 594 P.2d 1337, 1338 (1979) (en banc); 70 C.J.S. *Perjury,* § 42, at 290 (1987). The English law "throws every fence round a person accused of perjury." *Bronston v. United States,* 409 U.S. 352, 359, 93 S.Ct. 595, 600, 34 L.Ed.2d 568 (1973) (quoting W. BEST, PRINCIPLES OF THE LAW OF EVIDENCE (C. Chamberlayne ed. 1883)). In *Bronston,* the Court stated that "the perjury statute is not to be loosely construed," 409 U.S. at 360, 93 S.Ct. at 600–601, and held that the statute did not reach literally true answers to questions even if those answers were unresponsive, misleading, and incomplete. *Id.* at 360–62, 93 S.Ct. at 600–602; *see also United States v. Kehoe,* 562 F.2d 65, 68 n. 2 (1st Cir.1977).

The legislative history cited by Judge KING supports the proposition that the word "procuring" in the subornation statute was intended to be "broadly interpreted." [1] Chairman Clarke did not suggest, however, that "perjury" should be expansively construed to cover Allen's directive to Ms. Ford not to tell the grand jury anything at all.

■ In order to establish that Allen committed subornation of perjury, the prosecution was required to prove, *inter alia,* that he knew or believed that "the testimony of the witness about to be given *will be false.*" *Boren v. United States,* 144 F. 801, 802 (9th Cir.1906) (emphasis added); *see also Petite v. United States,* 262 F.2d 788, 794 (4th Cir. 1959).[2] "It must be shown that the suborner

---

1. In the words of Chairman David A. Clarke of the Judiciary Committee, the term "procuring" is "intended to be broadly interpreted to include instigating, persuading or inducing another by any means to commit perjury." See Judge KING'S opinion, at 7. The evident import of his words was that it did not matter *how* the suborner induced the perjury; all corrupt means of doing so are prohibited. There is nothing in the legislative history to suggest that the statute was intended to broaden the traditional definition of perjury or to make that offense easier to prove.

2. The defendant in *Petite,* cited by Judge KING, was an attorney who had been charged with suborning perjury in a naturalization proceeding.

It was in the context of a lawyer's presentation of a mendacious witness that the court said that "a defendant may be guilty without having instructed the witness what to say." 262 F.2d at 796. The court went on to state:

It is enough if the lawyer, the defendant, in this case, knows that the testimony that the witness is going to give is not true and knows that the witness knows it, and still puts him on the stand to give it and causes and induces him to do it.

*Id.* The judge also told the jury that the principal dispute in the case was whether Petite and the witness agreed upon the false testimony in advance, as the prosecution contended, or whether the witness testified falsely on his own

induced the witness to testify in a certain way and that the suborner knew or believed that such testimony would constitute a false oath." 4 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW, § 607, at 330 (14th ed. 1981 & Supp.1993). The directive "Don't tell them nothing" cannot reasonably be viewed as meeting these requirements.

Even if we were to assume that the subornation statute could plausibly be construed as reaching Allen's conduct—an assumption which I view as unsound—application of the rule of lenity would be appropriate. "The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself." *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820). "This policy embodies the instinctive distaste against men languishing in prison unless the lawmaker has *clearly* said they should." *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971) (emphasis added) (quoting H. FRIENDLY, MR. JUSTICE FRANKFURTER AND THE READING OF STATUTES (1967)) (internal quotation marks omitted). The lawmaker has not "clearly" said that Allen's conduct was subornation of perjury; in fact, in my view, the legislature has not said so at all.

The government is expanding the subornation statute well beyond its terms when it attempts to apply it to a directive to a witness to tell the grand jury *nothing*. Accordingly, Allen's conviction for subornation of perjury must be reversed.

initiative and did not meet with Petite until later, as the defense claimed. *Id.* at. Taken as a whole, the *Petite* decision lends no support to the government's position here.