# IN THE SUPREME COURT OF IOWA

No.19–1616

Submitted November 17, 2021—Filed January 21, 2022

**STATE OF IOWA,**

Appellee,

vs.

**KOURTNEY SHONTEZ HALL,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

The defendant challenges the sufficiency of the evidence supporting his convictions for suborning perjury and obstructing prosecution. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

McDonald, J., delivered the opinion of the court, in which all justice joined.

John J. Sullivan (argued) of Sullivan Law Office, P.C., Oelwein (until withdrawal), and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines (argued), Assistant Attorney General, for appellee.

**McDONALD, Justice.**

"Just because you don't go to church doesn't mean that you're gonna go to jail," said defendant Kourtney Hall to his former girlfriend Emily Bowers, during a jail visitation Bowers had with Hall while Hall was being detained on a parole violation and pending charges. In a second visitation later that same day, Hall reiterated to Bowers that she should not go to "church" and that she would not be in trouble if she did not go to church. Bowers understood Hall was making a coded request that Bowers dishonor a subpoena and not attend a deposition in which she was expected to give testimony criminating Hall. Despite Hall's repeated entreaties and assurances, Bowers attended the deposition and gave truthful testimony criminating Hall. The State charged Hall with two counts of suborning perjury and two counts of obstructing prosecution arising out of his coded requests. The jury found Hall guilty of all charges, and Hall filed this appeal. Hall contends there was insufficient evidence to sustain the convictions.

I.

In May 2019, Hall was detained in the Polk County Jail on a parole violation and pending charges. On Friday, May 3, Hall attended the deposition of Detective Christopher Vesey. During the deposition, Detective Vesey stated that Emily Bowers had been subpoenaed for a deposition to be held the following Monday, May 6, in the pending criminal case against Hall. According to Detective Vesey, Bowers was an important witness in the case and was expected to place Hall at the scene of a crime.

Hall and Bowers had dated from May of 2018 until February 2019. Although they had officially broken up by May of 2019, Hall and Bowers were still in a "gray area" and involved with each other in some way. On Sunday, May 5, Bowers had two electronic visitations with Hall using the Polk County Jail's iWeb visitation system. All visitations over the iWeb visitation system were recorded. During the two recorded visitations with Bowers, Hall repeatedly requested that Bowers not attend "church" and repeatedly assured Bowers that she would not be in trouble for not attending "church." Hall tried to coax Bowers's nonattendance at "church" with vague statements regarding their future together. For example, Hall said, "Where's the first place you want to go when we get out? That's what I think about. . . . You aren't going to church tonight are you?" Bowers interpreted Hall's statements to be coded requests that she should "not . . . go to the deposition on May 6 to give [her] testimony."

Despite Hall's coded requests and assurances, Bowers attended the deposition and gave testimony in Hall's presence. She told the truth and criminated Hall with respect to the pending criminal case. Bowers testified it was "very hard." Hall and Bowers visited on iWeb after the deposition. Hall's attitude towards Bowers was very different during this third visitation. He was "very upset with [Bowers], very upset, very angry, kind of acting like it was [her] fault for everything."

The State charged Hall with two counts of suborning perjury, in violation of Iowa Code section 720.3 (2019), arising out of his conduct during the first two iWeb visitations with Bowers. Iowa Code section 720.3 provides:

A person who procures or offers any inducement to another to make a statement under oath or affirmation in any proceeding or other matter in which statements under oath or affirmation are required or authorized, with the intent that such person will make a false statement, or who procures or offers any inducement to one who the person reasonably believes will be called upon for a statement in any such proceeding or matter, to conceal material facts known to such person, commits a class "D" felony.

The State also charged Hall with two counts of obstructing prosecution, in violation of Iowa Code section 719.3(2). That statute provides:

A person who, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, knowingly does any of the following acts, commits an aggravated misdemeanor:

. . . .

2. Induces a witness having knowledge material to the subject at issue to leave the state or hide, or to fail to appear when subpoenaed.

At trial, the State called Detective Vesey and Bowers as witnesses and introduced into evidence the three recorded iWeb visitations. No one disputed that Hall's references to church were coded requests that Bowers not attend her deposition. At trial, during cross-examination of Bowers, Hall's lawyer acknowledged as much:

Q. And let's cut to the chase on this.
A. Uh-huh.
Q. When Mr. Hall said "church," he meant the depositions, didn't he?
A. Yes.
Q. And there's no question about that?
A. No.
Q. And he likely didn't want you to go; isn't that right?
A. Correct.

While Bowers testified Hall's references to church were coded requests that she not attend the deposition, she also testified Hall never asked her to lie or withhold information while under oath:

> Q. Did Mr. Hall ever tell you to lie about what you had seen?
> A. No.
> Q. Did Mr. Hall ever tell you to appear at depositions and lie?
> A. No, he did not.
> Q. Did he ever tell you to withhold statements or information from the State?
> A. No.
> Q. Did he ever tell you to lie or withhold information from the police?
> A. No.
> Q. Did he ever tell you to, when under oath, not tell the full truth?
> A. No.
> Q. Mr. Hall never made any threats or promises to you related to going to depositions; isn't that correct?
> A. No. He told me not to go to church, which I interpreted as not going to depositions.

Hall moved for directed verdict and judgment of acquittal. With respect to the counts of suborning perjury, Hall argued that even if his statements to Bowers were coded requests that she not attend the deposition, those coded requests did not constitute suborning perjury as a matter of law:

> In Counts I and II for suborning perjury, no witness has testified in any stretch of the imagination that Mr. Hall told Emily Bowers not to provide information after being placed under oath.
>
> The only indication that the State has argued in this case is that he encouraged her not to be present at court, and that does not meet the definition of suborning perjury.
>
> This code section is written to attack the behavior of people, to manipulate a witness to appear and then not give truthful information. That is what perjury is about, and to suborn perjury is to encourage that.

There's simply no evidence that's indicated that Mr. Hall told Emily Bowers to be present and then not give full and complete information. There's no evidence that she was told to show up at trial and lie. None of that information has been presented. None of that information has been indicated.

Now, I believe that the State's indication of how they want to proceed with this is by telling somebody not to appear is that they would then be withholding material information, but that does not meet all of the elements of suborning perjury. You must be placed under oath and then not do it, to have all of the factors together and required.

With respect to the charges of obstructing prosecution, Hall argued there was insufficient evidence of inducement given that, among other things, Bowers actually appeared for her deposition. The district court denied Hall's motions, and the jury found him guilty as charged.

Hall timely appealed, and we transferred the matter to the court of appeals. The court of appeals rejected Hall's challenges to the sufficiency of the evidence. The court of appeals reasoned that Hall's coded requests to Bowers that she not attend the deposition, coupled with Hall's statements regarding their relationship, was sufficient evidence to establish criminal liability. The court of appeals also rejected two additional claims Hall raised on appeal: that the district court abused its discretion in admitting the recorded video visitations into evidence and abused its discretion in denying his motion for new trial.

We granted Hall's application for further review. Because we find Hall's challenges to the sufficiency of the evidence dispositive, we need not address his remaining assignments of error.

II.

This court reviews sufficiency of evidence claims for the correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). "We will uphold the district court's denial of a motion for judgment of acquittal if there is substantial evidence in the record to support the defendant's conviction." *State v. McPhillips*, 580 N.W.2d 748, 752 (Iowa 1998). Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. *Sanford*, 814 N.W.2d at 615. We view the evidence in the light most favorable to the State, including "all reasonable inferences that may fairly be drawn from the evidence." *McPhillips*, 580 N.W.2d at 753.

III.

We first address Hall's challenge to his convictions for suborning perjury. Hall contends that even if his references to church were coded requests that Bowers not appear for her deposition, those requests do not constitute suborning perjury within the meaning of Iowa Code section 720.3. Hall contends the statute criminalizes only a request that the witness provide false testimony while under oath or affirmation and not a request that the witness not appear. The State disagrees. The State contends the statute also criminalizes a request that the witness not appear because the witness's failure to appear would necessarily conceal material facts known to the witness.

The parties' dispute regarding the scope of criminal liability under section 720.3 raises a question of statutory interpretation. "We interpret statutes consistent with common law unless the language of the statute clearly negates

the common law." *State v. Pace*, 602 N.W.2d 764, 771 (Iowa 1999). "The assumption is that even the statutory criminal law is to be administered in accordance with the general principles of right and justice recognized in the common–law system." *State v. O'Neil*, 126 N.W. 454, 456 (Iowa 1910). Of course, the common law and relevant legal history can serve only to inform—and not deform—the meaning of statutory text. This is because, generally speaking, our interpretive inquiry focuses on "the language of the statute at issue." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). We "seek to determine the ordinary and fair meaning of the statutory language." *Id.* In determining the ordinary and fair meaning of the statute at issue, we do not look at the statutory language in isolation. Instead, we "take into consideration the language's relationship to other provisions of the same statute and other provisions of related statutes." *Id.*

With these interpretative principles in mind, we begin our analysis with a discussion of the common law regarding perjury and subornation of perjury. "At common law, the crime of perjury could only occur in the course of a judicial proceeding while a person was under oath or affirmation." *State v. Carter*, 618 N.W.2d 374, 376 (Iowa 2000) (en banc). As explained in the *Commentaries*, perjury extended only to the provision of materially false information in particular judicial proceedings after the administration of the oath:

> The next offence against public justice is when the suit is past its commencement, and come to trial. And that is, the crime of wilful and corrupt perjury: which is defined by Sir Edward Coke to be a crime committed when a lawful oath is administered, in some judicial proceeding, to a person who swears wilfully, absolutely, and falsely in a matter material to the issue or point in question. The law takes no notice of any perjury but such as is committed in some

court of justice having power to administer an oath; or before some magistrate or proper officer invested with a similar authority, in some proceedings relative to a civil suit or a criminal prosecution: for it esteems all other oaths unnecessary, at least, and therefore will not punish the breach of them.

4 William Blackstone, *Commentaries* \*137 (emphasis omitted). Subornation of perjury, meanwhile, was "the offence of procuring another to take such a false oath as constitutes perjury in the principal." *Id.*; *see* Gary L. McDowell, *"High Crimes and Misdemeanors": Recovering the Intentions of the Founders*, 67 Geo. Wash. L. Rev. 626, 642 (1999). In sum, at common law, the essence of the crimes of perjury and subornation of perjury was the violation of the oath in a judicial proceeding.

Our perjury statute and precedents are in general accord with the common law. Our legislature expanded the common law definition of perjury to extend beyond judicial proceedings "to include false statements in 'any proceeding or other matter in which statements under oath or affirmation are required or authorized by law.'" *Carter*, 618 N.W.2d at 376 (quoting Iowa Code § 720.2 (1997)). Whatever the nature of the proceeding, however, "the 'oath or affirmation' requirement remains an essential element of the crime" of perjury. *Id.* And "it is essential that a person appear before a designated officer to satisfy the oath or affirmation requirement." *Id.* at 377. Thus, in *State v. Carter*, we affirmed the district court's dismissal of a perjury charge where the defendant filed a false application under oath but did not appear before a designated officer that administered the oath. *Id.* We reasoned that the "legislature intended the 'oath or affirmation' element of perjury under section 720.2 to be accomplished

in the presence of an authorized official" and that this was "consistent with our case law" and "consistent with our common law." *Id.*

Because the crime of perjury requires the willful violation of an oath or affirmation made in the presence of an authorized official, a witness's failure to appear at a proceeding in which she was expected to give testimony under oath is not perjury within the meaning of our statute and precedents. *See State v. Storm*, 898 N.W.2d 140, 166 (Iowa 2017) (Hecht, J., dissenting) (citing *Carter*, 618 N.W.2d at 377) ("[P]hysical presence is required to support perjury convictions under the Iowa Code"); *Carter*, 618 N.W.2d at 377; *Hicks v. Stigler*, 323 N.W.2d 262, 263–64 (Iowa Ct. App. 1982) ("In the case presently before us, there is no evidence of perjury . . . since plaintiff was not 'under oath or affirmation' when the statements were made."); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lambros*, 1 F. Supp. 2d 1337, 1345 (M.D. Fla. 1998) (finding insufficient evidence that civil plaintiff suborned a witness's perjury when the witness "never testified, much less committed perjury"); *King v. State*, 233 S.E.2d 340, 340 (Ga. 1977) ("Of course, one can be convicted of perjury only for knowingly and wilfully making a materially false statement under oath and not for a refusal to testify."); *West v. State*, 492 S.E.2d 576, 580 (Ga. Ct. App. 1997) ("Perjury can only be committed by knowingly and willfully making a materially false statement under oath; perjury cannot be committed by silence or refusal to testify, because perjury is an affirmative act of intentionally violating the oath.").

Our subornation-of-perjury statute and precedents are in general accord with the common law. The essence of the offense is the suborner's request that the witness give materially false testimony after the administration of the oath by an authorized official. Traditionally, it was not enough to show that the suborner merely made such a request. Instead, subornation of perjury required proof that the suborned witness actually provided false testimony under oath. In *State v. Porter*, we explained the crime of subornation of perjury inheres "in the result[]—the procurement" of false testimony. 75 N.W. 519, 519 (Iowa 1898). "Subornation is in its essence perjury, and the perpetrator of the offense a sort of an accessory before the fact." *State v. Lomack*, 106 N.W. 386, 387 (Iowa 1906). In the leading case of *State v. Wykert*, we stated that "[s]ubornation of perjury consists in procuring or instigating another to commit the crime of perjury." 199 N.W. 331, 333 (Iowa 1924). The actual provision of false testimony was a "necessary and material" element of the offense. *State v. Hartwick*, 290 N.W. 523, 525 (Iowa 1940). Section 720.3 eliminated this traditional requirement and now criminalizes any request or offer of any inducement to commit perjury without regard to whether the suborned witness actually committed perjury. *See* Iowa Code 720.3. While section 720.3 expanded the scope of liability for suborning perjury by criminalizing a request or offer of any inducement, the statute did not eliminate the requirement that the request or offer of any inducement must still be a request or offer of any inducement *for the suborned witness to give materially false testimony after the administration of the oath by an authorized official.*

This is evident in the statutory text. Iowa Code section 720.3 criminalizes two types of conduct. The first type of conduct is subornation of perjury by an act of commission. This requires proof the defendant procured or offered an inducement to another "with the intent that such person will make a false statement" while "under oath or affirmation in any proceeding." Iowa Code § 720.3. The second is subornation of perjury by omission. This requires proof the defendant procured or offered an inducement to another "to conceal material facts known to such person" in "any such proceeding." *Id.* The statutory references to "any proceeding" and "any such proceeding" refer to proceedings "in which statements under oath or affirmation are required or authorized." *Id.* In either type of case, an essential element of the offense is the procurement or inducement to have another provide false testimony or to conceal material facts *while "under oath or affirmation." Id.* (emphasis added); *see Storm*, 898 N.W.2d at 166 (Hecht, J., dissenting); *Carter*, 618 N.W.2d at 377; *Hicks*, 323 N.W.2d at 263–64; *see also King*, 233 S.E.2d at 340; *West*, 492 S.E.2d at 580.

This is also evident in the title of the statute. Although the title of a statute cannot change the plain meaning of the statutory text, it can be considered in interpreting the text. *State v. Ross*, 941 N.W.2d 341, 347 (Iowa 2020) (stating the court can consider the title of a statute to determine legislative intent). This is particularly true where the title of the statute is merely the word, or in this case the offense, defined in the statutory text. "[T]he word being defined is the most significant element of the definition's context. The normal sense of that word and its associations bear significantly on the meaning of ambiguous words or phrases

in the definition." *Id.* (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 232 (2012)). The title of the statute is "Suborning perjury." Iowa Code § 720.3. The plain meaning of "suborning perjury" is to persuade or induce a person to commit perjury, which is to provide false testimony after the administration of the oath or affirmation. *Suborn, Black's Law Dictionary* (11th ed. 2019) ("To induce (a person) to commit perjury; specif[ically], to persuade (someone) to lie under oath . . . ."); *Subornation of Perjury, Black's Law Dictionary* ("The crime of persuading another to commit perjury; the act of procuring a witness to testify falsely."). As discussed above, a witness's failure to appear does not constitute perjury. It logically follows that a request or offer of any inducement that a witness fail to appear does not constitute subornation of perjury.

Hall's coded request that Bowers simply not appear for her deposition does not fall within the statutory scope of liability. The District of Columbia Court of Appeals reached the same conclusion in the materially indistinguishable case of *Riley v. United States*. 647 A.2d 1165, 1173–75 (D.C. 1994) (majority opinions of Ferren and Schwelb, JJ.). In *Riley*, the defendant was convicted of suborning perjury when he told a witness to not testify before a grand jury. *Id.* at 1174. According to the witness, the defendant told her "don't be scared, they're just trying to scare you. Don't tell them nothing!" *Id.* (emphasis omitted). In two separate opinions, the majority of the court held there was insufficient evidence to support the conviction. Judge Ferren, in an opinion joined by Judge Schwelb, stated the defendant's conduct did not constitute subornation of perjury as a

matter of law because "[t]he government has proved only that [the defendant] suborned silence." *Id.* at 1173 (Ferren, J., opinion). Because there was no evidence the defendant requested the witness "relay a specific falsity (or any falsity) when he told her, 'Don't tell them nothing,'" Judge Ferren held, "as a matter of law [the defendant] cannot be convicted for subornation of perjury." *Id.* Judge Schwelb, joined by Judge Ferren, reached the same conclusion, stating the government must prove "that the suborner induced the witness to testify in a certain way and that the suborner knew or believed that such testimony would constitute a false oath." *Id.* at 1174–75 (Schwelb, J., opinion) (quoting 4 Charles E. Torcia, *Wharton's Criminal Law* § 607 (14th ed. 1981 & Supp. 1993)). "The directive 'Don't tell them nothing' cannot reasonably be viewed as meeting these requirements." *Id.* at 1175. "The government is expanding the subornation statute well beyond its terms when it attempts to apply it to a directive to a witness to tell the grand jury nothing. Accordingly, [the defendant's] conviction for subornation of perjury must be reversed." *Id.* (emphasis omitted).

Other courts have reached have reached the same conclusion in similar contexts. More than a century ago, the Supreme Court of Minnesota held a defendant who bribed a witness to leave the state could not be convicted of inducing the witness "to withhold true testimony." *State ex rel. Thurston v. Sargent*, 73 N.W. 626, 627 (Minn. 1898). It was "plain" to the court that "bribing or offering to bribe the witness to stay away from the trial" was a separate act from bribing a witness "to withhold true testimony." *Id.* The court later reaffirmed this decision in *State v. Wurdemann*, where the defendant "attempted to induce

a young woman to absent herself completely and give no testimony whatever." 120 N.W.2d 317, 318 (Minn. 1963). As in *Sargent*, the defendant's actions in attempting to induce the witness's complete absence from trial were not sufficient to prove the defendant attempted to induce the witness to "withhold true testimony." *Id.* The New York Supreme Court, Appellate Division also reached the same result in *People v. Insogna*, where an attorney was convicted of bribing a witness against his client to leave the state rather than testify before a grand jury. 281 N.Y.S.2d 124, 126 (App. Div. 1967) (per curiam). While the attorney allegedly knew of the witness's whereabouts and sent her money during her absence, the act of inducing the witness to leave the state and withhold her testimony completely was not the same as inducing the witness to "withhold true testimony," as the statute required. *Id.* at 127.

Hall's convictions in this case must be reversed for the same reasons. When the evidence is viewed in the light most favorable to the State, Hall offered an inducement to Bowers—the hope of a future relationship between them—that she not attend the deposition. Hall did not request or offer any inducement that she testify falsely under oath or that she conceal material information while under oath. Hall's conduct thus falls outside the scope of statutory liability. We vacate the defendant's convictions for subornation of perjury.

IV.

We next address Hall's challenges to his convictions for obstructing prosecution. Obstructing prosecution occurs when a defendant knowingly "induces a witness having knowledge material to the subject at issue . . . to fail

to appear when subpoenaed" if the defendant does so with the intent to obstruct the prosecution of any person. Iowa Code § 719.3. Hall's challenge to his convictions presents the question of whether the statute requires proof the witness actually failed to appear when subpoenaed or whether the statute merely criminalizes an offer of an inducement to the witness to fail to appear when subpoenaed. Like Hall's challenge to his perjury convictions, this issue requires us to interpret a statute. We must determine the "ordinary and fair meaning of the statutory language" of Iowa Code section 719.3, including "the language's relationship to other provisions of the same statute and other provisions of related statutes." *Doe*, 943 N.W.2d at 610. For the reasons expressed below, we conclude the statute requires proof the witness actually failed to appear when subpoenaed.

The express language of section 719.3 does not address offers or attempted inducements but instead addresses only "inducements." The omission of any language regarding offers or attempted inducements stands in stark contrast to the text of the subornation of perjury statute, section 720.3, which criminalizes "offers" of any inducement to another person to make a false statement or to conceal material facts under oath or affirmation. Iowa Code § 720.3. The contrast between the statutes is particularly revealing because both statutes were passed at the same time in the same piece of legislation. *Compare* 1976 Iowa Acts ch. 1245, § 1903 (enacting the obstructing prosecution statute), *with id.* § 2003 (enacting the suborning perjury statute). When interpreting statutes, we have recognized that meaning "is expressed through selective placement of statutory

terms." *State v. Macke*, 933 N.W.2d 226, 235 (Iowa 2019). Meaning "is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so mentioned." *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995). The conscious omission from the obstructing prosecution statute of language regarding "offers" of an inducement supports the conclusion that the statute prohibits only conduct that actually results in a witness's failure to appear. Iowa Code § 719.3(2).

There are other places in the Code that demonstrate the statutory term "induce" requires proof that an act be successfully completed or a result be effectively brought about. In multiple instances, the Code discusses inducements and attempted inducements in the same statutory provision, from which we can infer the former does not encompass the latter. *See, e.g.,* Iowa Code § 123A.5(1)(*a*) (2021) (prohibiting brewers from taking actions to "[i]nduce or coerce, *or attempt to induce or coerce,* any wholesaler to engage in any illegal act or course of conduct" (emphasis added)); *id.* § 216.8A(1) (prohibiting actions by a person to "induce *or attempt to induce* another person to sell or rent a dwelling by representations regarding the entry or prospective entry into a neighborhood of a person of a particular race, color" or other protected characteristic (emphasis added)); *id.* § 502.501A (prohibiting securities dealers from taking actions to "induce *or attempt to induce*" the purchase of securities by fraud or deceit (emphasis added)); *id.* § 714E.4(7) (prohibiting foreclosure consultants from taking actions to "[i]nduce *or attempt to induce*" a property owner to enter into a

contract that does not comply with the statutory provisions governing such consultants (emphasis added)).

By its plain language, Iowa Code section 719.3(2) (2019) thus does not criminalize an offer of an inducement or attempted inducement but only prohibits conduct that succeeds in actually causing a witness to fail to appear when subpoenaed. The most that the State proved in this case was that Hall offered Bowers an inducement to not appear at the deposition. It is undisputed that Bowers did appear as required by the subpoena. Since the statute does not criminalize an offer of an inducement not to appear—and since there is no separate crime of "attempted obstruction of prosecution"—the evidence in this case was insufficient to convict Hall under Iowa Code section 719.3(2). *See State v. Banks*, No. 10–1318, 2011 WL 1818011, at *1 (Iowa Ct. App. May 11, 2011) (noting that in a prosecution under Iowa Code section 719.3, the state agreed the statute does not prohibit "attempted inducement"); *see also State v. Walker*, 856 N.W.2d 179, 187 (Iowa 2014) (stating "Iowa does not have a general attempt statute," meaning inchoate offenses must be specifically proscribed in the Code).

The Arizona Court of Appeals, faced with the same question, reached the same conclusion in *State v. Gray*. 258 P.3d 242 (Ariz. Ct. App. 2011). Gray sent two letters to a witness encouraging the witness to not testify against him at trial. *Id.* at 243–44. The witness ignored Gray's request and testified, but Gray was alleged to have "induce[d]" the witness "to unlawfully withhold testimony" and was convicted of witness tampering. *Id.* at 244. This allegedly violated Arizona's witness tampering statute as it was then drafted. *Id.* (citing Ariz. Rev.

Stat. § 13–2804(A)(1) (2009)). After surveying dictionaries, cases from other jurisdictions, and the legislative history, the court concluded that to "induce" a witness not to testify required proof that the defendant "knowingly caused a witness or a person he believed might be called as a witness to unlawfully withhold testimony," meaning the defendant must have succeeded in causing the witness to not appear. *Id.* at 247. The court noted that the Arizona legislature could have drafted the statute "to prohibit both the accomplished act and an unsuccessful attempt" but that it had not done so and surmised this omission was intentional. *Id.* at 246.

We agree with the reasoning in *Gray*, and it lends strong support to our conclusion that a defendant cannot violate Iowa Code section 719.3 and "induce" a witness to fail to testify by unsuccessfully offering or attempting to produce the witness's unavailability. Decades of decisions from other courts have reached similar conclusions in interpreting the term "induce." *See, e.g.*, *Mfrs. Hanover Tr. Co. v. Kearney Chems., Inc. (In re Kearney Chems., Inc.)*, 468 F. Supp. 1107, 1111 (D. Del. 1979) (stating, on a claim for inducement of a breach of contract, that "[t]he word 'induces' refers to the situations in which A causes B to choose one course of conduct rather than another" (quoting Restatement (First) of Torts § 766 cmt. d (Am. L. Inst. 1939))); *Hautau v. Kearney & Trecker Corp.*, 179 F. Supp. 490, 492 (E.D. Mich. 1959) ("Although not entirely unequivocal, these definitions indicate that the word 'induce' commonly denotes an act that is effective and has specific results rather than a mere unsuccessful attempt to bring about these results."); *State v. Stratford*, 37 P.2d 681, 683 (Idaho 1934)

(applying the dictionary definition of "induce" as meaning "[t]o bring on or about; to effect; cause"); *Young v. Commonwealth*, 968 S.W.2d 670, 672 (Ky. 1998) ("The term induce signifies a successful persuasion; that the act has been effective and the desired result obtained." (quoting *State v. Miller*, 252 A.2d 321, 325 (Me. 1969))), *overruled on other grounds by Matthews v. Commonwealth*, 163 S.W.3d 11 (Ky. 2005); *Miller*, 252 A.2d at 324–25 (collecting cases and other sources regarding the definition of "induce"); *State v. Marbury*, No. 52848, 1987 WL 19252, at *3 (Ohio Ct. App. Oct. 29, 1987) ("Under the common meaning of the word, a person has not 'induced' another to commit an act unless that act was in fact committed.").

Our conclusion today does not deprive the State of tools to prosecute conduct wherein a defendant unsuccessfully attempts to discourage or prevent a witness from testifying. For instance, Iowa Code section 720.4, titled "Tampering with witnesses or jurors," prohibits defendants from offering bribes to witnesses or from making "any threats toward" a witness "with the intent to improperly influence" the witness's testimony. However, the evidence was insufficient to find that Hall breached the obstructing prosecution statute under which he was charged. We are not at liberty to read the statute to prohibit conduct not plainly encompassed by its terms. *See Sallee v. Stewart*, 827 N.W.2d 128, 150 (Iowa 2013) ("We do not engage in innovations or improvements of the statute. Rather, we interpret it as we find it."). We therefore vacate the defendant's convictions for obstructing prosecution.

V.

For the foregoing reasons, we reverse Hall's convictions in their entirety and remand to the district court for entry of judgment of acquittal on all counts.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**